COPY

TRISH M. HIGGINS (State Bar No. 119215)
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814-4497
Telephone: 916-447-9200
Facsimile: 916-329-4900

MICHAEL D. WEIL (State Bar No. 209056)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: 415-773-5700
Facsimile: 415-773-5759

Attorneys for Defendant
Morgan Stanley & Co., Inc.
(f/k/a Morgan Stanley DW, Inc.)

ORIGINAL FILED
MAY 14 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JCS

FISHER INVESTMENTS, INC., a California corporation,

Plaintiff,

v.

MORGAN STANLEY DW, INC., a Delaware corporation, and DOES 1-10, inclusive,

Defendants.

Case No. C 07 2547

**NOTICE OF REMOVAL BY DEFENDANT MORGAN STANLEY & CO., INC. (F/K/A MORGAN STANLEY DW, INC.)**

ENTERED
MAY 1 2007

OHS West:260217926.1

NOTICE OF REMOVAL BY DEFENDANT MORGAN STANLEY & CO., INC. (F/K/A MORGAN STANLEY DW, INC.) (CASE NO. ____________)

To the Clerk of Court, Plaintiff Fisher Investments, Inc. and its attorneys of record:

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. sections 1441 *et seq.*, defendant Morgan Stanley & Co., Inc. (formerly known as Morgan Stanley DW, Inc.) ("Morgan Stanley") hereby removes this action from the Superior Court of California for the County of San Mateo to the United States District Court for the Northern District of California, based on the following facts:

**PROCEEDINGS TO DATE**

1. On April 12, 2007, a civil action was commenced in the Superior Court of California for the County of San Mateo entitled "Fisher Investments, Inc., a California corporation, Plaintiff, vs. Morgan Stanley DW, Inc., a Delaware corporation, and Does 1-10, inclusive, Defendants," No. 1-07-CIV-462241 (the "Action"). A true copy of the Complaint and the summons and other papers issued with the Complaint are attached to this notice as Exhibit A. The allegations of the Complaint in the Action are incorporated by reference in this notice without necessarily admitting any of them.

2. Defendant's registered agent for service of process was served with the Complaint and the other papers, which are attached as Exhibit A, on April 13, 2007. Therefore, this notice is timely as it is filed within thirty (30) days of the first receipt by a defendant of a copy of the Summons and Complaint in this matter. 28 U.S.C. § 1446(b).

3. The Complaint alleges causes of action for misappropriation of trade secrets and confidential information, intentional interference with business relations, unfair competition (violation of Business and Professions Code section 17200), unjust enrichment, and conversion.

5. Defendant is informed and believes and on that basis alleges that there have been no other named defendants in this case and that no other defendant, whether named or not, has been served with or otherwise received the Complaint in the Action.

**JURISDICTION**

6. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, as (i) the defendant to this action and the plaintiff are citizens of different states, and (ii) Defendant is informed and believes, and therefore alleges, that the amount in controversy

exceeds the sum of $75,000, exclusive of interest and costs. Therefore, this action is removable pursuant to 28 U.S.C. § 1441(a).

**GROUNDS FOR REMOVAL**

7. This action is a civil action between citizens of different states, for purposes of 28 U.S.C. § 1332(a)(i), because Plaintiff and Defendant are of diverse citizenship. Complete diversity existed at the time that this action was filed and still exists.

a. **Plaintiff's Citizenship.** Plaintiff, as it alleges, is a citizen of the State of California. Complaint, ¶ 3.

b. **Defendant Morgan Stanley's Citizenship**. Pursuant to 28 U.S.C. section 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Morgan Stanley is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware, with its principal place of business in the State of New York. Morgan Stanley conducts business in many states, does not conduct a majority of its activities in any single state, and its corporate headquarters is located in New York. *See Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1093 (9th Cir. 1990) (where corporation conducts business in many states and does not conduct majority of its business in any single state, state of corporate headquarters is the corporation's principal place of business). Additionally, the majority of Morgan Stanley's employees and the majority of Morgan Stanley's tangible properties are not found in California. *See id.* at 1094 (location of employees and tangible property are relevant factors to determining if a particular state is the location of the majority of corporate activity).

d. **Doe Defendants.** Pursuant to 28 U.S.C. section 1441(a), the citizenship of fictitious defendants is disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332; *see also Bryant v. Ford Motor*

*Co.*, 886 F.2d 1526 (9th Cir. 1989), cert. denied, 493 U.S. 1076 (1990).

8. This action meets the amount in controversy requirement of 28 U.S.C. § 1332(b), as Plaintiff alleges in its Complaint that it is entitled to compensatory damages and prejudgment interest. *See* Complaint p. 14, ¶¶ 6 and 7. Plaintiff also seeks exemplary damages and attorneys' fees. *See* Complaint p. 15, ¶¶ 11-12. Based on the foregoing, the amount in controversy in this case easily exceed the jurisdictional minimum. Accordingly, Defendant is informed and believes, and on that basis alleges, that it is factually apparent from the Complaint that Plaintiff claims damages in an amount in excess of $75,000 and, therefore, the amount in controversy in the Action (exclusive of interest and costs) is in excess of $75,000.

9. Because this Action is currently pending before the Superior Court of California for the County of San Mateo, this District is the proper venue for this Action upon removal. *See* 28 U.S.C. § 1441(a).

Dated: May 14, 2007

TRISH M. HIGGINS
MICHAEL D. WEIL
ORRICK, HERRINGTON & SUTCLIFFE LLP

By: ______________________
Michael D. Weil
Attorneys for Defendant
Morgan Stanley & Co., Inc.
(f/k/a Morgan Stanley DW, Inc.)

4/13/07 @ 3:40p.

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED FILED
SAN MATEO COUNTY
APR 1 2 2007
Clerk of the Superior Court
By M. Javillonar
DEPUTY CLERK

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
MORGAN STANLEY DW, INC.

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
FISHER INVESTMENTS, INC.

**You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.**

**There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.**

***Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.***

***Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.***

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Mateo County Superior Court
400 County Center
Redwood City, CA 94063

CASE NUMBER:
*(Número del Caso):* C 462241

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Nancy L. Fineman, COTCHETT, PITRE & McCARTHY
840 Malcolm Road, Suite 200, Burlingame, CA 94010 Phone: 650-697-6000

DATE: *(Fecha)* APR 1 2 2007 JOHN C. FITTON Clerk, by *(Secretario)* M. JAVILLONAR, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Morgan Stanley DW, Inc.

under: ☑ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc. | www.USCourtForms.com

JOSEPH W. COTCHETT (#36324; jcotchett@cpmlegal.com)
NANCY L. FINEMAN (#124870; nfineman@cpmlegal.com)
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

SCOTT METZGER (#89718; metzger@dsmwlaw.com)
ANNA F. ROPPO (#132680; roppo@dsmwlaw.com)
**DUCKOR SPRADLING METZGER & WYNNE**
3043 - 4th Avenue
San Diego, CA 92103
Telephone: (619) 209-3000
Facsimile: (619) 209-3043

Attorneys for Plaintiff
FISHER INVESTMENTS, INC.

ENDORSED FILED
SAN MATEO COUNTY
APR 1 2 2007
Clerk of the Superior Court
By M. Javillonar
DEPUTY CLERK

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SAN MATEO**

FISHER INVESTMENTS, INC., a California corporation,

Plaintiff,

vs.

MORGAN STANLEY DW, INC., a Delaware corporation, and DOES 1-10, inclusive,

Defendants.

Case No. C 462241

**COMPLAINT FOR:**

1. **MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION**
2. **INTERFERENCE WITH BUSINESS RELATIONS**
3. **UNFAIR COMPETITION**
4. **UNJUST ENRICHMENT**
5. **CONVERSION**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION . . . . . 1

II. JURISDICTION AND VENUE . . . . . 1

III. THE PARTIES . . . . . 1

A. PLAINTIFF . . . . . 2

B. DEFENDANT . . . . . 2

C. DOE DEFENDANTS . . . . . 3

D. AGENTS AND CO-CONSPIRATORS . . . . . 3

IV. FACTUAL BACKGROUND . . . . . 4

A. FISHER IS A SUCCESSFUL INVESTMENT ADVISER . . . . . 4

B. FISHER USES PROPRIETARY INFORMATION IN ITS CLIENT RELATIONSHIPS AND TO MAINTAIN ITS COMPETITIVE ADVANTAGE . . . . . 5

C. MORGAN STANLEY HIRES KLAUKA AND KNOWINGLY USES PROPRIETARY AND TRADE SECRET INFORMATION TAKEN FROM FISHER . . . . . 6

FIRST CAUSE OF ACTION (Misappropriation of Trade Secrets and Confidential Information) . . . . . 7

SECOND CAUSE OF ACTION (Intentional Interference with Business Relations) . . . . . 11

THIRD CAUSE OF ACTION (Violation of Business and Professions Code §17200) . . . . . 12

FOURTH CAUSE OF ACTION (Unjust Enrichment) . . . . . 12

FIFTH CAUSE OF ACTION (Conversion) . . . . . 13

PRAYER . . . . . 13

LAW OFFICES COTCHETT, PITRE & MCCARTHY

Plaintiff, FISHER INVESTMENTS, INC. (hereafter "Plaintiff" or "Fisher") alleges against the defendants, MORGAN STANLEY DW, INC. ("Morgan Stanley") and DOES 1-10, inclusive, on information and belief, based upon, *inter alia*, the investigation conduct by Plaintiff and its attorneys, except to those allegations which pertain to Plaintiff, as follows:

## I. INTRODUCTION

1. This case involves Defendant Morgan Stanley's misappropriation of Fisher's proprietary information and trade secrets, including client lists and other highly private information entrusted to Fisher by its clients, which misappropriation is unfairly enriching Morgan Stanley to Fisher's detriment. Morgan Stanley knowingly obtained this information from a former employee of Fisher hired by Morgan Stanley. In this lawsuit, Fisher seeks damages from the harm that it has suffered as a result of Defendants' acts and equitable relief enjoining Defendants from using this proprietary information ever again.

## II. JURISDICTION AND VENUE

2. Defendant Morgan Stanley does business and has offices throughout California, including two offices in San Mateo County.

4. Venue is proper in this County because a substantial part of the events, acts, omissions and transactions complained of herein occurred in this County, including the taking of the trade secrets from Fisher.

5. Each named Defendant has sufficient minimum contacts with California, is a citizen of California, or otherwise purposefully avails itself of benefits from California or doing business in California so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

6. The amount in controversy exceeds the jurisdictional minimum of this Court.

///

///

## III. THE PARTIES

### A. PLAINTIFF

3. Plaintiff Fisher is one of America's leading investment advisers who enjoys an unusually high client retention rate. It is registered as such under the Investment Advisers Act of 1940. 15 U.S.C. § 80b, *et seq.* Headquarted in San Mateo County with over 870 employees (700 working in San Mateo County), Fisher manages portfolios for investors including Fortune 500 companies, pension plans, foundations, endowments, and individual investors. It currently manages over $38 billion of assets.

### B. DEFENDANT

4. Defendant Morgan Stanley, a corporation, is a financial advisor to companies, governments and investors from around the world, including California. It has 600 offices in 31 countries, including over 40 offices throughout California, which includes two offices in San Mateo County. Morgan Stanley has over $697 billion in assets under management.

5. Morgan Stanley recognizes the importance of the relationship between itself and its clients. It informs its clients that they must be committed to providing their financial advisor with all relevant information about their financial condition, goals, risk tolerances and time horizons, and meet regularly with their financial advisors to review their financial situation and investment positions. Morgan Stanley commits to clients to understand their financial needs, investment objectives, tolerance for risk and time horizons and to help set realistic expectations about the long-term performance and risk of their investments.

6. Morgan Stanley professes to have a Code of Ethics and Business Conduct which emphasizes the firm's core values of "integrity, excellence, respect for individuals and cultures, entrepreneurial spirit and teamwork." Employees are cautioned to avoid not only actual misconduct but the appearance of impropriety. Morgan Stanley promises to act in the best interest of clients, the firm, and the public including competitors:

///

> The Firm seeks to outperform its competition fairly and honestly through superior performance. Every director, officer, and employee must protect the Firm's reputation by dealing fairly with clients, the public, **competitors**, suppliers, and one another. **No one should take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, or misrepresentation of facts**. Officers and employees are specifically required to comply with the Reputational Risk Policy, which sets forth the Firm's framework for managing franchise risk, suitability issues, and conflicts of interest. (emphasis added).

By its acts as alleged herein, Defendants have taken unfair advantage of Fisher by improperly using privileged and confidential proprietary information belonging to Fisher.

**C. <u>DOE DEFENDANTS</u>**

7. The true names and capacities, whether individual, corporate, associate or otherwise of Defendants Doe 1 through Doe 10, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names pursuant to Code of Civil Procedure § 474. Plaintiff further alleges that each of said fictitious Doe Defendants is in some manner responsible for the acts and occurrences hereinafter set forth. Plaintiff will amend this Complaint to show their true names and capacities when the same are ascertained, as well as the manner in which each fictitious Defendant is responsible for the damages sustained by Plaintiff.

**D. <u>AGENTS AND CO-CONSPIRATORS</u>**

8. Each Defendant was the agent, alter-ego, joint venturer, servant and employee of each other Defendant, and in performing the acts described in this complaint, was acting in the scope of his, her, or its authority with the consent of each other Defendant. Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants.

9. Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts, plans, schemes, and transactions, to improperly misappropriate Fisher's proprietary information.

10. Defendants, and each of them, have participated as members of the conspiracy or acted with or in furtherance of it, or aided or assisted in carrying out its

///

purposes alleged in this Complaint, and have performed acts and/or made statements in furtherance of the violations and conspiracy.

11. The named Defendant and the fictitiously-named Defendants are jointly and/or severally liable and are legally responsible for the wrongful conduct that caused the damages alleged in this Complaint.

## IV. FACTUAL BACKGROUND

### A. FISHER IS A SUCCESSFUL INVESTMENT ADVISER

12. Fisher is a registered investment adviser, whose clients include Fortune 500 companies, pension plans, foundations, endowments, and thousands of high net worth individuals around the world. It was founded in 1973 and incorporated in 1986. Fisher's Investment Policy Committee oversees the management of the assets of Fisher's customers. Fisher is headquartered in Woodside, California where all of its investment professionals who are involved in the business strategy are located. The facility features state of the art technology for optimal performance in trading, research, and client services, including proprietary information about its clients. The company also has sales and client service operations throughout the United States and in the United Kingdom, whose activities are overseen by the company's headquarters.

13. As discussed more fully below, Fisher maintains a staff of various employees, some of whom solicit potential customers, others who evaluate customer objectives and discuss recommendations of the Investment Policy Committee with those customers, and others who perform various other tasks relating to the business of Fisher.

14. As one of the hundreds of Fisher employees, David Allen Klauka aka Ike Klauka ("Klauka") was a regional outside sales person ("OSP") with Fisher's Private Client Group. As an OSP, he solicited clients for Fisher from quality leads developed by Fisher and provided to Klauka. Klauka did not make investment decisions on behalf of Fisher's clients, nor did he provide Fisher's clients with investment advice.

///

///

### B. FISHER USES PROPRIETARY INFORMATION IN ITS CLIENT RELATIONSHIPS AND TO MAINTAIN ITS COMPETITIVE ADVANTAGE

15. In order to best serve its clients and maintain its competitive advantage, Fisher uses proprietary information about its clients' financial needs and background. It is imperative that this information be kept confidential. As a condition of his employment with Fisher, and the many benefits he received from Fisher, Klauka expressly agreed in his Employment Contract with Fisher that the names, addresses, e-mail addresses and other confidential information relating to Fisher clients, including their investment habits and special needs, was information provided in confidence by Fisher to Klauka. Klauka further agreed that such information constituted a trade secret of Fisher and that its sale, unauthorized use or disclosure would constitute unfair competition. These type of agreements are typical in the industry because of the industry-wide recognition of the proprietary and confidential nature of this information.

16. Moreover, Klauka's Employment Contract with Fisher expressly provides that Klauka would not make known any such information to any person, firm, or corporation after termination of his employment with Fisher. Specifically, Klauka agreed that he would not use any such trade secret and confidential information to solicit, take away, or attempt to call on, solicit or take away any of the customers or prospective customers of Fisher on whom he called or with whom he became acquainted during his employment with Fisher, either for himself or for any other person, firm, or corporation.

17. Klauka also executed a "Fisher Investments Information Policy" which specifically states that broad categories of client information are "proprietary property" of Fisher which is "not to be retrieved, downloaded, copied, recorded, or otherwise transferred from possession of Fisher…not to be given or conveyed in any manner, shape, or form, outside the normal business operation of Fisher…to a non-Fisher employee…".

18. During the term of Klauka's employment with Fisher, Fisher, from its headquarters in San Mateo County, provided him with many customer leads. These leads were secured over a number of years with the expenditure of great financial resources and

tremendous amounts of time. Fisher developed these quality leads by, among other things, sending out direct mail, brochures, DVDs, CD-ROMs, and other print media. Before these quality leads were provided to Klauka, Fisher employees in San Mateo County had pre-qualified them by obtaining complete and necessary contact data, including but not limited to e-mail addresses, insuring that the leads met Fisher's minimum investment policies, confirming that the leads had indicated interest in the services that Fisher had to offer them, and even setting up appointments for Klauka to meet with these prospects.

19. As an employee of Fisher, Klauka had access to and use of Fisher's confidential, trade secret customer information stored in San Mateo County, including but not limited to client lists, client names, addresses, e-mail addresses, asset values, investment propensities, risk tolerance and related information which was not public information and which Fisher spent enormous resources accumulating and organizing ("Confidential Account Information").

### C. MORGAN STANLEY HIRES KLAUKA AND KNOWINGLY USES PROPRIETARY AND TRADE SECRET INFORMATION TAKEN FROM FISHER

20. Klauka left Fisher on September 8, 2005, and became employed with Morgan Stanley on September 28, 2005.

21. Klauka was in negotiations for employment with Morgan Stanley prior to the termination of his employment with Fisher.

22. Klauka was in possession of Fisher's trade secret and confidential information when he left Fisher, including but not limited to client and prospective client identities and account information. Morgan Stanley was fully aware that Klauka had misappropriated these trade secrets and may have assisted Klauka in obtaining Fisher's trade secret and confidential information.

23. Prior to leaving Fisher and after accepting employment with Morgan Stanley, Klauka accessed Fisher's secure databases in San Mateo County, California, using the password that Fisher had entrusted to him, in order to obtain and take Fisher's

trade secret and Confidential Account Information with him to Morgan Stanley.

24. Morgan Stanley has been knowingly using Fisher's trade secret and Confidential Account Information to solicit Fisher clients since employing Klauka.

25. Prior to leaving Fisher and after entering into a memorandum of understanding with Morgan Stanley, Klauka, contrary to Fisher policies and with Morgan Stanley's knowledge and encouragement, renewed contact with several Fisher clients with the intent of eventually luring those Fisher clients to use the services Morgan Stanley rather than Fisher. Morgan Stanley knew that this information was confidential and proprietary to Fisher and knew the advantage that having this information could provide to Morgan Stanley.

26. Klauka, while in the employ of Morgan Stanley and with their full knowledge and complicity, has been calling Fisher customers, contacting Fisher customers through electronic and regular mail, using Fisher trade secret and confidential information to do so, and attempting to induce Fisher customers to transfer their assets from Fisher to Morgan Stanley.

27. Klauka, with the full knowledge and complicity of Morgan Stanley, has made direct contacts with Fisher customers, including contact by use of Fisher customers' e-mail addresses, using Fisher trade secret and Confidential Account Information which Klauka obtained while employed by Fisher, in an attempt to have those customers transfer all of or at least a portion of their assets to Morgan Stanley.

28. Morgan Stanley knowingly allowed and continues to allow Klauka to use Fisher's Confidential Account Information to solicit Fisher clients in order to lure their business from Fisher to Morgan Stanley.

29. As a result of the above-acts of Defendants, and each of them, Fisher has been damaged.

///

///

**FIRST CAUSE OF ACTION**

**(Misappropriation of Trade Secrets and Confidential Information)**

30. Plaintiff incorporates by reference the preceding paragraphs 1 through 29 as though fully set forth herein.

31. On September 8, 2005, Klauka's employment with Fisher was terminated. Prior to that, he entered into a memorandum of understanding with Morgan Stanley. Within a short period of time, on or about September 28, 2005, Klauka executed an employment agreement with Morgan Stanley.

32. As a result of Klauka's employment with Fisher, and while in a position of responsibility, trust and confidence, Klauka became intimately familiar with Fisher's operations and was granted access to and gained knowledge of numerous trade secrets and confidential and proprietary information that are the property of Fisher and are on Fisher's databases maintained on Fisher's servers in San Mateo County, California, including, without limitation, the following: the identities of and detailed information related to Fisher's customers; their e-mail addresses and related contact information, each customer's preferences and desires as to investment strategies, highly confidential personal information, and financial accommodations granted each customer. The customer list was developed over a substantial period of time, required substantial money and resources to compile, is unavailable to the public or to others in the registered investment adviser industry, or financial advisor industry and would be of great value to Fisher's competitors, like Morgan Stanley.

33. The customer list and customer information has been the subject of tremendous efforts by Fisher to maintain its confidentiality, including compliance with 17 CFR PART 248 (which requires that a financial institution not disclose nonpublic personal information about a consumer to nonaffiliated third parties), restricting access thereto to only those employees of Fisher who must use the customer list and customer information in performing their jobs, ensuring that all employees execute employment contracts with confidentiality provisions, and ensuring that all employees execute the

Fisher Investment Information Policy regarding the retention and protection of confidential customer information.

34. Klauka was formerly an employee of Fisher, having been employed as an OSP with Fisher. As such, Klauka was entrusted with access to and protection of the customer list and confidential customer information. In connection with Klauka's employment agreement with Fisher, he acknowledged in writing his duty to protect Fisher's customer list and confidential customer information.

35. Klauka disclosed to Defendant Morgan Stanley some or all of the trade secrets and confidential and proprietary information of Plaintiff that Klauka obtained in the course of his employment with Plaintiff.

36. In the course of competing with Plaintiff, Defendant Morgan Stanley has used the trade secrets and confidential and proprietary information of Plaintiff disclosed by Klauka. The wrongful disclosure by Klauka and wrongful use by Morgan Stanley of Plaintiff's trade secrets and confidential and proprietary information entrusted to Klauka, including the customer lists and confidential information, understanding of Plaintiff's operation, and Plaintiff's marketing and production plans with respect to Plaintiff's services, has given Morgan Stanley a substantial competitive advantage to which it is not entitled.

37. Defendants, and specifically Morgan Stanley, knew or had reason to know that the confidential information gained by Klauka as a result of his employment with Plaintiff contained trade secrets and confidential and proprietary information of Plaintiff in that the information had independent economic value and was not generally known to the public or to others who could have obtained economic value from the disclosure or use of the information, and that Plaintiff made or took substantial efforts to ensure the secrecy of this information. Klauka's acts in using the misappropriated information were within the course and scope of his employment/agency with Morgan Stanley. Morgan Stanley is therefore responsible for the wrongful acts of Klauka, including the misappropriation of trade secret and confidential information belonging to Plaintiff.

38.    Defendants, and specifically Morgan Stanley, misappropriated the trade secrets of Plaintiff as defined in Civil Code section 3426.1 to their own economic benefit by the wrongful disclosure and use of such information, without the consent of Plaintiff, while knowing or having reason to know that Klauka had acquired the information and secrets under circumstances giving rise to a duty to maintain their secrecy.

39.    Defendants have been unjustly enriched by their actions and that Plaintiff has been correspondingly damaged in a sum to be proven at trial.

40.    Defendants committed their acts of misappropriation willfully and maliciously.  Defendants' conduct justifies an award to Plaintiff of exemplary damages under Civil Code section 3426.3(c) and of attorney fees and costs under Civil Code section 3426.4.

41.    In the absence of an injunction, Defendants will continue to violate Plaintiff's rights in the ways discussed above.  In addition, as discussed above, Klauka is intimately familiar with Plaintiff's operations related to its services, including without limitation Plaintiff's customer base, and sales and marketing plans.  Because of this, and because Defendants are in direct competition with Plaintiff, selling similar or competing services, Defendants will inevitably continue to wrongfully disclose and use Plaintiff's trade secrets and confidential and proprietary information and unfairly compete with Plaintiff and misappropriate Plaintiff's trade secrets and confidential and proprietary information, thus damaging Plaintiff's reputation and goodwill unless Defendants are enjoined from continuing to use or disclose Plaintiff's trade secrets and confidential and proprietary information.

42.    Klauka, within the course and scope of his employment/agency with Morgan Stanley, continues to use and intends to continue to use Plaintiff's Confidential Account Information for the purpose of luring away Fisher clients to Morgan Stanley.

43.    Morgan Stanley is aware that Klauka continues to use and intends to continue to use Plaintiff's Confidential Account Information for the purpose of luring away Fisher clients to Morgan Stanley.

44. Defendants' illegal acts as described above are a serious and continuing threat to Plaintiff's reputation, business and goodwill causing damage to Plaintiff. If Defendants are allowed to continue their wrongful acts, Plaintiff will suffer further immediate and irreparable injury, loss and damage, including without limitation damages the amount of which will not be readily ascertainable, loss of sales the amount of which will not be readily ascertainable, and irreparable injury to Plaintiff's reputation, business and goodwill.

45. Plaintiff has no adequate remedy at law to compel Defendants to cease their wrongful actions and, unless this court grants an injunction, Plaintiff will be compelled to prosecute a multiplicity of actions, in each of which it will be difficult to ascertain the amount of compensation which will afford Plaintiff adequate relief.

**SECOND CAUSE OF ACTION**

**(Intentional Interference with Business Relations)**

46. Plaintiff incorporates by reference the preceding paragraphs 1 through 45 as though fully set forth herein.

47. Plaintiff was involved in a valid and existing business relationship with its customers, providing a series of financial investment and advisory services.

48. Defendants knew of the relationship between Plaintiff and its customers and the potential customers that Plaintiff might obtain through the use of this information.

49. Defendants intentionally disrupted the relationship between Plaintiff and its customers by, among other things, committing the wrongful acts set forth in detail above, in paragraphs 1 through 44 inclusive.

50. As a result of Defendants' intentional acts, the business relationship between Plaintiff and its customers and potential customers has been disrupted and Plaintiff has been damaged.

51. Defendants' interference with the business relationship between Plaintiff and its customers has and will result in damage to Plaintiff that is not readily ascertainable and irreparable injury to Plaintiff's business, reputation and goodwill.

52. Plaintiff has no adequate remedy at law to compel Defendants to cease their wrongful actions and, unless this court grants an injunction, Plaintiff will be compelled to prosecute a multiplicity of actions, in each of which it will be difficult to ascertain the amount of compensation which will afford Plaintiff adequate relief.

53. In committing the acts described above, the Defendants, and each of them, acted willfully and in conscious disregard of the rights and interests of Plaintiff, thus entitling Plaintiff to exemplary damages according to proof at the time of trial.

**THIRD CAUSE OF ACTION**

**(Violation of Business and Professions Code §17200)**

54. Plaintiff incorporates by reference the preceding paragraphs 1 through 53 as though fully set forth herein.

55. Defendants have wrongfully misappropriated, or have attempted to wrongfully misappropriate, Plaintiff's trade secrets and confidential and proprietary information, reputation, and goodwill. Such actions are likely to mislead the public and constitute unfair competition in violation of Business and Professions Code sections 17200 *et seq*. Defendants' actions also constitute a violation of the Uniform Trade Secrets Act, Civil Code sections 3426 *et seq*., and therefore constitute unlawful business practices within the meaning of Business and Professions Code sections 17200 *et seq*.

56. As a direct and proximate result of Defendants' conduct, Defendants have received and continue to receive Plaintiff's trade secret, proprietary and confidential information that rightfully belong to Plaintiff.

57. Plaintiff is entitled to relief, including full restitution and such other relief that the Court deems just in light of the ill-gotten gains obtained by Defendants as a result of such business practices or acts.

58. Unless Defendants are enjoined from continuing to use or disclose Plaintiff's trade secrets and confidential and proprietary information Plaintiff will suffer irreparable harm.

/ / /

**FOURTH CAUSE OF ACTION**

**(Unjust Enrichment)**

59. Plaintiff incorporates by reference the preceding paragraphs 1 through 58 as though fully set forth herein.

60. By the wrongful acts alleged above, including the misappropriation of trade secrets and proprietary information, Defendants, and each of them, have been unjustly enriched at the expense of Plaintiff, and all assets and benefits gained from such assets, which rightfully belong to Plaintiff, are being held by the Defendants in a constructive trust for the benefit of Plaintiff.

61. In committing the acts described above, the Defendants, and each of them, acted willfully and in conscious disregard of the rights and interests of Plaintiff, thus entitling Plaintiff to exemplary damages according to proof at the time of trial.

**FIFTH CAUSE OF ACTION**

**(Conversion)**

62. Plaintiff incorporates by reference the preceding paragraphs 1 through 61 as though fully set forth herein.

63. The conduct of the named Defendants, and each of them, constitutes conversion of Plaintiff's property, including its trade secrets, and proprietary and confidential information in violation of its rights.

65. Since the time of the conversion of Plaintiff's property, Plaintiff has expended considerable resources to investigate and prosecute this action, all to its further damage in an amount to be proven at trial.

66. Plaintiff is entitled to the imposition of a constructive trust for the benefit of on the wrongfully converted property, as well as on the assets of Defendants obtained through use of Plaintiff's property.

67. Defendants' acts were willful, wanton and malicious, and oppressive, and were taken with the intent to defraud, and justify the awarding of exemplary and punitive damages.

**PRAYER**

WHEREFORE, Plaintiff demands judgment against Defendants and each of them for:

1. Temporary and permanent orders enjoining Defendants from destroying or disposing of any documents memorializing any part of Plaintiff's trade secrets or confidential and proprietary information.

2. Temporary and permanent orders enjoining Defendants from disclosing or using Plaintiff's trade secrets or confidential and proprietary information and requiring Defendants to return to Plaintiff all documents memorializing any part of Plaintiff's trade secrets or confidential and proprietary information.

3. Temporary and permanent orders enjoining Defendants from soliciting any customers or prospective customers of Plaintiff whose identities or product preferences became known to Klauka while an employee of Plaintiff.

4. Temporary and permanent orders enjoining Klauka from revealing Plaintiff's trade secrets and proprietary and confidential information to Defendants;

5. Temporary and permanent orders enjoining Defendants from unfairly competing with Plaintiff, misappropriating Plaintiff's trade secrets and confidential and proprietary information, and wrongfully interfering with Plaintiff's continuing and prospective economic relations with its customers;

6. Compensatory damages in an amount to be proven at the time of trial;

7. Prejudgment interest;

8. A decree that the above acts of Defendants were, and are, unfair acts of competition in violation of Business and Professions Code section 17200;

9. An accounting of any profits improperly made by Defendants, and imposing a constructive trust on the profits in favor of Plaintiff;

10. Pursuant to Business and Professions Code section 17203, and pursuant to the equitable powers of the court, restitution to Plaintiff from Defendant corporation of all funds acquired by means of any practice determined to constitute unfair competition;

11. Exemplary damages in such sum as the court may determine;

12. An award of reasonable attorneys' fees as authorized by Civil Code section 3426.4;

13. Costs of this action;

14. Any alternative and additional relief as the court deems just and proper.

Dated: April 12, 2007

**COTCHETT, PITRE & McCARTHY**
**DUCKOR SPRADLING METZGER & WYNNE**

By ______________________
NANCY L. FINEMAN
*Attorneys for Plaintiff*

LAW OFFICES
COTCHETT, PITRE & McCARTHY

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name, State Bar number, and address*):
Nancy L. Fineman (#124870)
COTCHETT, PITRE & McCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010
TELEPHONE NO.: 650-697-6000 FAX NO.: 650-697-0577
ATTORNEY FOR (*Name*): Plaintiff

FOR COURT USE ONLY

RECEIVED
APR 1 2 2007
CLERK OF THE SUPERIOR COURT
SAN MATEO COUNTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME:

CASE NAME:
Fisher Investments, Inc. v. Morgan Stanley DW, Inc., et al.

**CIVIL CASE COVER SHEET**

[✓] **Unlimited** (Amount demanded exceeds $25,000)
[ ] **Limited** (Amount demanded is $25,000 or less)

**Complex Case Designation**
[ ] **Counter** [ ] **Joinder**
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER:
JUDGE:
DEPT:

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (*not specified above*) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Type of remedies sought (*check all that apply*):
   a. [✓] monetary b. [✓] nonmonetary; declaratory or injunctive relief c. [✓] punitive
4. Number of causes of action (*specify*):
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: April 12, 2007
Nancy L. Fineman
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2007]
CIVIL CASE COVER SHEET
American LegalNet, Inc. www.FormsWorkflow.com
Cal. Rules of Court, rules 3.220, 3.400–3.403; Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

### To Plaintiffs and Others Filing First Papers

If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 5 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

### To Parties in Complex Cases

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller
    - Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief from Late Claim
  - Other Civil Petition

# NOTICE OF CASE MANAGEMENT CONFERENCE

ENDORSED FILED SAN MATEO COUNTY APR 1 2 2007 Clerk of the Superior Court BY M. Javillonar DEPUTY CLERK

Fisher Investments

vs.

Morgan Stanley

Case No. CIV 462241

Date: AUG 14 2007

Time: 9:00 a.m.

Dept. 2 – on Tuesday & Friday
Dept. 8 – on Wednesday & Thursday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of Court and Local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:
   a. **Serve** all named defendants and file proofs of service on those defendants with the court within **60 days** of filing the complaint (CRC 201.7).
   b. **Serve** a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.
   c. **File and serve** a completed Case Management Statement at least **15 days** before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.
   d. **Meet and confer**, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than **30 days** before the date set for the Case Management Conference.

**2. If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order To Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

3. Continuances of case management conferences are highly disfavored unless good cause is shown.
4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation To ADR and Proposed Order (see attached form.). If plaintiff files a Stipulation To ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a **completed** stipulation to another ADR process (e.g., mediation) **10 days** prior to the first scheduled case management conference, the case management conference will be continued for 90 days to allow parties time to complete their ADR session. The court will notify parties of their new case management conference date.
5. If you have filed a default or a judgment has been entered, your case is not automatically taken off the Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.
6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.
7. The Case Management judge will issue orders at the conclusion of the conference that may include:
   a. Referring parties to voluntary ADR and setting an ADR completion date;
   b. Dismissing or severing claims or parties;
   c. Setting a trial date.
8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court website at www.sanmateocourt.org.

* Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least 5 business days prior to the scheduled conference (see attached CourtCall information).

CM-110

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:

TELEPHONE NO.: FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS: Superior Court of California
MAILING ADDRESS: County of San Mateo
CITY AND ZIP CODE: 400 County Center
BRANCH NAME: Redwood City, CA 94063-1655

PLAINTIFF/PETITIONER:
DEFENDANT/RESPONDENT:

**CASE MANAGEMENT STATEMENT**

**(Check one):** ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less)

CASE NUMBER:

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: Time: Dept.: Div.: Room:

Address of court *(if different from the address above)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted **jointly** by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) ☐ have had a default entered against them *(specify names)*:
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

CASE MANAGEMENT STATEMENT

Page 1 of 4

Cal. Rules of Court, rules 3.720–3.730
www.courtinfo.ca.gov

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| --- | --- |
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial *(if more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☐ The trial has been set for *(date):*
   b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*
   c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
   a. ☐ days *(specify number):*
   b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
   a. Attorney:
   b. Firm:
   c. Address:
   d. Telephone number:
   e. Fax number:
   f. E-mail address:
   g. Party represented:

☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
   a. Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
   b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
   c. ☐ The case has gone to an ADR process *(indicate status):*

Superior Court of California - County of San Mateo

## ADR Stipulation and Evaluation Instructions

In accordance with ***Local Rule 2.3(i)(3),*** all parties going to ADR must complete a Stipulation and Order to ADR and file it with the Clerk of the Superior Court. The Office of the Clerk is located at:

Clerk of the Superior Court, Civil Division
Attention: Case Management Conference Clerk
Superior Court of California, County of San Mateo
400 County Center
Redwood City, CA 94063-1655

There is no filing fee for filing the stipulation. An incomplete stipulation will be returned to the parties by the Clerk's Office. All stipulations must include the following:

- ❑ Original signatures for all attorneys (and/or parties in pro per);
- ❑ The name of the neutral;
- ❑ Date of the ADR session; and
- ❑ Service List (Counsel need not serve the stipulation on parties).

Parties mutually agree on a neutral and schedule ADR sessions directly with the neutral. If parties would like a copy of the San Mateo County Superior Court's ADR Panelist List and information sheets on individual panelists, they may go to the court's website (see below) or contact the ADR Coordinator at (650) 363-1962 or (650) 599-1070.

### If Filing the Stipulation Prior to an Initial Case Management Conference

To stipulate to ADR prior to the initial case management conference, parties must file a completed stipulation at least 10 days before the scheduled case management conference. The clerk will send notice of a new case management conference date approximately 90 days from the current date to allow time for the ADR process to be completed.

### If Filing Stipulation Following a Case Management Conference

When parties come to an agreement at a case management conference to utilize ADR, they have 21 days from the date of the case management conference to file a Stipulation and Order to ADR with the court [***Local Rule 2.3(i)(3)***].

### Post-ADR Session Evaluations

***Local Rule 2.3(i)(5)*** requires submission of post-ADR session evaluations within 10 days of completion of the ADR process. Evaluations are to be filled out by both attorneys and clients. A copy of the Evaluation By Attorneys and Client Evaluation are attached to the ADR Panelist List or can be found on the court's web site.

### Non-Binding Judicial Arbitration

Names and dates are not needed for stipulations to judicial arbitration. The Judicial Arbitration Administrator will send a list of names to parties once a stipulation has been submitted. The Judicial Arbitration Administrator can be contacted at (650) 363-4896. For further information regarding San Mateo Superior Court's ADR program, contact the ADR offices at (650) 599-1070 or the court's ADR web site at **http//www.co.sanmateo.ca.us.sanmateocourts/adr.htm**.

SUPERIOR COURT OF CALIFORNIA – COUNTY OF SAN MATEO

## APPROPRIATE DISPUTE RESOLUTION INFORMATION SHEET

In addition to the court provided voluntary and mandatory settlement conferences, this court has established, in partnership with the community and Bar Association, the Multi-Option ADR Project. Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the San Mateo County Superior Court encourages the parties in civil cases to explore and pursue the use of Appropriate Dispute Resolution

### WHAT IS APPROPRIATE DISPUTE RESOLUTION?

Appropriate Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes that are alternatives to lawsuits. Types of ADR processes include arbitration, mediation, neutral evaluation, mini-trials, settlement conferences, private judging, negotiation, and hybrids of these processes. All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes.

### WHAT ARE THE ADVANTAGES OF USING ADR?

ADR can have a number of advantages over traditional court litigation.

- **ADR can save time**. Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.
- **ADR can save money.** By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorney's fees and court expenses).
- **ADR provides more participation.** Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.
- **ADR provides more control and flexibility.** Parties can choose the ADR process most appropriate for their particular situation and that will best serve their partic ular needs.
- **ADR can reduce stress and provide greater satisfaction.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation. Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

### Arbitration, Mediation, and Neutral Evaluation

Although there are many different types of ADR processes, the forms most commonly used to resolve disputes in California State courts are Arbitration, Mediation and Neutral Evaluation. The Multi-Option ADR Project a partnership of the Court, Bar and Community offers pre-screened panelists with specialized experience and training in each of these areas.

**Arbitration:** An arbitrator hears evidence presented by the parties, makes legal rulings, determines facts and makes an arbitration award. Arbitration awards may be entered as judgments in accordance with the agreement of the parties or, where there is no agreement, in accordance with California statutes. Arbitrations can be

binding or non-binding, as agreed by the parties in writing.

**Mediation:** Mediation is a voluntary, informal, confidential process in which the mediator, a neutral third party, facilitates settlement negotiations. The mediator improves communication by and among the parties, helps parties clarify facts, identify legal issues, explore options and arrive at a mutually acceptable resolution of the dispute.

**Neutral Evaluation:** Involves presentations to a neutral third party with subject matter expertise who may render an opinion about the case the strengths and weaknesses of the positions, the potential verdict regarding liability, and a possible range for damages.

**ADR PROCEDURES FOR THE SAN MATEO COUNTY SUPERIOR COURT**

- Upon filing a Complaint, the Plaintiff will receive this **information sheet** from the Superior Court Clerk. Plaintiff is expected to include this information sheet when he or she **serves the Complaint** on the Defendant.

- All parties to the dispute may voluntarily agree to take the matter to an ADR process. A stipulation is provided here. Parties chose and contact their own ADR provider. A Panelist List is available on-line.

- If the parties have not agreed to use an ADR process, an initial Case Management Conference ("CMC") will be scheduled within 120 days of the filing of the Complaint. An **original and copy of the Case Management Conference Statement must be completed and provided to the court clerk no later than 15 days prior to the scheduled conference**. The San Mateo County Superior Court Case Management Judges will strongly encourage all parties and their counsel to consider and utilize ADR procedures and/or to meet with the ADR director and staff where appropriate.

- If the parties voluntarily agree to ADR, the parties will be required to sign and file a **Stipulation and Order to ADR.**

- A timely filing of a stipulation (at least 10 days prior to the CMC) will cause a notice to vacate the CMC. ADR stipulated cases (other than judicial arbitration) will be continued for further ADR/Case Management status review in 90 days. If the case is resolved through ADR, the status review date may be vacated if the court receives a dismissal or judgment. The court may upon review of case information suggest to parties an ADR referral to discuss matters related to case management, discovery and ADR.

- Any ADR Services shall be paid for by the parties pursuant to a separate ADR fee agreement. The ADR Director may screen appropriate cases for financial aid where a party is indigent.

- Local Court Rules require your cooperation in evaluating the ADR Project and will expect a brief evaluation form to be completed and submitted **within 10 days of completion of the process.**

**Information: For ADR forms go to the local forms section of the courts website: www.co.sanmateo.ca.us/sanmateocourts/adr.htm.**

**For more information contact the Multi-Option ADR Project, 400 County Center, Redwood City, CA 94063, (650) 363-1962 or (650) 599-1070; fax 650/599-1754**

| Attorney or Party without Attorney (Name, Address, Telephone, Fax, State Bar membership number): | Court Use Only |
|---|---|
| **Superior Court of California, County of San Mateo** Hall of Justice and Records 400 County Center Redwood City, CA 94063-1655 (650) 363-4711 | |
| Plaintiff(s): | Case Number: |
| Defendant(s): | Current CMC Date: |

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

Plaintiff will file this stipulation with the Clerk's Office 10 days prior to or 3 weeks following the first Case Management Conference unless directed otherwise by the Court and ADR Director [*Local Rule 2.3(i)(3)*]. Please attach a Service List.

The parties hereby stipulate that all claims in this action shall be submitted to (select one):

☐ Voluntary Mediation
☐ Neutral Evaluation
☐ **Non-Binding Judicial Arbitration CCP 1141.12**
☐Other: ______________
☐ Binding Arbitration (private)
☐ Settlement Conference (private)
☐ Summary Jury Trial

Case Type: ________________________________

Neutral's name and telephone number: ________________________________

Date of session: ______________________________
(Required for continuance of CMC except for non-binding judicial arbitration)

Identify by name the parties to attend ADR session: ________________________________

ORIGINAL SIGNATURES

________________________________
Type or print name of ☐Party without attorney
☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant

________________________________
☐Attorney for (Signature)
Attorney or Party without attorney

________________________________
Type or print name of ☐Party without attorney
☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant

________________________________
☐Attorney for (Signature)
Attorney or Party without attorney

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

Type or print name of ☐Party without attorney

☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant

☐Attorney for (Signature)

Attorney or Party without attorney

Type or print name of ☐Party without attorney

☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant

☐Attorney for (Signature)

Attorney or Party without attorney

**IT IS SO ORDERED:**

DATE:

JUDGE OF THE SUPERIOR COURT OF SAN MATEO COUNTY

## DIVISION II
## COURT MANAGEMENT - SUPERIOR COURT

### CHAPTER 1. FORM AND SERVICE OF PAPERS

Rule 2.0 Transfer of Court-Related Functions of the County Clerk to the Superior Court

Pursuant to the authority contained in Government Code section 69898, the court hereby transfers from the County Clerk to the Superior Court Executive Officer, under the direction of the Presiding Judge, all of the powers, duties, and responsibilities required or permitted to be executed or performed by the County Clerk in connection with judicial actions proceedings, and records.

(Adopted, effective July 1, 1996.)

Rule 2.1 Form of Papers Presented for Filing

Reference, CRC, rule 2.100, et seq.

(Adopted, effective July 1, 1996) (Amended effective January 1, 2000) (Amended, effective January 1, 2007)

Rule 2.1.1 Citations to Non-California Authorities.

(Adopted, effective July 1, 1996)(Repealed, effective January 1, 1999)

Rule 2.1.2 Requests for Judicial Notice

(Adopted, effective July 1, 1996)(Repealed, effective January 1, 1999)

Rule 2.1.3 California Environmental Quality Act (CEQA)

If a petition for writ of mandate includes claims under CEQA (Public Resources Code section 21000 et. seq.), the case will be assigned to a judge designated to hear CEQA actions pursuant to Public Resources Code section 21167.1. Plaintiff shall identify the petition as being filed pursuant to "CEQA" on the face of the petition.

(Adopted, effective January 1, 1999)(renumbered from 2.1.4 effective January 1,2000)

Rule 2.1.4 Documents Produced Through a Nonparty

If a party proposes to obtain documents in the custody of a nonparty, as by a subpoena duces tecum, and such documents may be produced by certification or otherwise in lieu of personal appearance by a witness custodian, the request for such documents should specify that they be delivered not later than the first day for which the trial is calendared.

(Adopted, effective January 1, 2000)

## CHAPTER 2. CIVIL TRIAL COURT MANAGEMENT RULES
## PART 1. MANAGEMENT DUTIES

Rule 2.2 Trial Court Management

Reference CRC, rules 3.700, 3.710-3.713, 10.900, 10.901

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2007)

## PART 2. CASEFLOW MANAGEMENT

Rule 2.3 New Case Management

This rule applies to all civil cases with the exception of the following: (1) juvenile court matters; (2) probate matters; (3) family law matters; and (4) civil cases which, based on subject matter, have been assigned to a judge, or to more than one judge, for all purposes. For rules applicable to these exceptions, see CRC 2.20, 2.30, 2.570-2.573, 2.585, 2.810-2.819, 2.830-2.834, 3.650, 3.700-3.735, 3.920-3.927, 3.1370, 3.1380-3.1385, 3.1590-3.1591, 3.1806, 5.590, 10.900-10.901, 10.910, 10.950-10.953,.

(a) Purposes and Goals

The purposes and goals of the San Mateo Superior Court Civil Case Management System effective January 1, 1992 are:

(1) To manage fairly and efficiently, from commencement to disposition, the processing of civil litigation.

(2) To prepare the bench and bar for full implementation of the Trial Court Delay Reduction Act (A.B. 3820) on July 1, 1992; and

(3) To encourage parties to agree to informal discovery early in the life of the case, to use standard form interrogatories and to promote alternative dispute resolution. Nothing in these rules is intended to prevent the parties from stipulating to an earlier intervention by the court by way of a case management conference, settlement conference or any other intervention that seems appropriate.

(4) In accordance with Sections 3.710-3.715, 10.900, 10.901 of the California Rules of Court, Local Rule 2.3 is adopted to advance the goals of Section 68603 of the Government Code and Section 2.1 of the Standards of Judicial Administration recommended by the Judicial Council.

(b) Team concept

Beginning January 1, 1994 civil litigation will be managed primarily by a team of two program judges.

The clerk will assign the case to a program judge at the time the complaint is filed. The case shall be managed by the assigned program judge until disposition or until the case is assigned to a trial department.

(c) Cases filed after July 1, 1992

Upon the filing of a complaint after July 1, 1992, the case shall be subject to all of the civil case management system rules set forth below. Cases filed before July 1, 1992 shall also be subject to these rules except for subsection (d) (Filing and service of pleadings; exceptions).

(d) Filing and service of pleadings; exceptions.

(1) Complaint: Except as provided in paragraph 5 below, plaintiff shall within 60 days after filing of the complaint serve the complaint on each defendant along with:

(A) A blank copy of the Judicial Council Case Management Statement;

(B) A copy of Local Rule 2.3;

(C) The Notice of Case Management Conference.

If a matter has been submitted to arbitration pursuant to uninsured motorist insurance, the plaintiff shall file a notice to that effect with the court at the time of filing the complaint, or at the time the matter is submitted. The notice shall include the name, address and telephone number of the insurance company, along with the claim number or other designation under which the matter is being processed.

(2) Cross-complaint: Except as provided in paragraph 5 below, each defendant shall within 30 days after answering the complaint file any cross-complaint (within 50 days if compliance with a governmental claims statute is a prerequisite to the cross-complaint) not already served with the answer under Code of Civil Procedure section. 428.50 and serve with that cross-complaint:

(A) A blank copy of the Judicial Council Case Management Statement;

(B) A copy of Local Rule 2.3;

(C) The Notice of Case Management Conference.

(3) Responsive pleadings: Except as provided in paragraph 5 below, each party served with a complaint or cross-complaint shall file and serve a response within 30 days after service. The parties may by written agreement stipulate to one 15-day extension to respond to a complaint or cross-complaint.

If the responsive pleading is a demurrer, motion to strike, motion to quash service of process, motion for a change of venue or a motion to stay or dismiss the case on forum non conveniens grounds, and the demurrer is overruled or the motion denied, a further responsive pleading shall be filed within 10 days following notice of the ruling unless otherwise ordered. If a demurrer is sustained or a motion to strike is granted with leave to amend, an amended complaint shall be filed within 10 days following notice of the ruling unless otherwise ordered. The court may fix a time for filing pleadings responsive to such amended complaint.

(4) Proofs of service: Proofs of service must be filed at least 10 calendar days before the case management conference.

(5) Exceptions for longer periods of time to serve or respond:

(A) Time to serve may be extended for good cause: Upon ex parte application to the court, *in compliance with California Rule of Court 379(g)*, within 60 days of the date the complaint was filed, plaintiff may obtain an extension of time to serve to a date on or before the case management conference, if good cause is shown by declaration of counsel (or plaintiff filing in propria persona). An additional extension of the time to serve (an initial extension if the application is by a cross-complainant) may be obtained upon written application to the court upon good cause shown before the prior extension has expired. The filing of a timely application for an extension will automatically extend the time to serve by five days, whether or not the application is granted.

Good cause will be found if the declaration shows that the action is filed against a defendant who is an uninsured motorist, and the plaintiff's claim is subject to an arbitration provision in plaintiff's contract of insurance. In determining good cause in other cases, the court will give due consideration to any standards, procedures and policies which have been developed in consultation with the bar of the county through the bench-bar trial court delay committee.

(B) Additional extension of time if uninsured motorist arbitration is pending. In addition to any extension of time obtained pursuant to subsection (5)(A) above, if an uninsured motorist arbitration is still pending between plaintiff and plaintiff's insurance carrier 30 days prior to the expiration of the extension, plaintiff may obtain an additional extension of time by an ex parte application supported by a declaration showing the scheduled or anticipated date of the arbitration hearing and the diligence of plaintiff in pursuing arbitration.

(C) Time to respond may be extended for good cause: Before the time to respond has expired, any party served with a complaint or cross-complaint may, with notice to all other parties in the action, make ex parte application to the court upon good cause shown for an extension of time to respond. The filing of a timely application for an extension will automatically extend the time to respond by five days, whether or not the application is granted.

(e) Case management conference

(1) Date of conference: Unless the parties stipulate in writing and the court orders that the case be earlier referred to arbitration, a case management conference will be set by the clerk at the time the complaint is filed. (Government Code 68616)

(2) Attendance at the case management conference is mandatory for all parties or their attorneys of record.

(3) Plaintiff must serve the Notice of Case Management on all parties no later than 30 calendar days before the conference, unless otherwise ordered by the Court.

(4) The Court will deem the case to be at-issue at the time of the conference (Reference: CRC 3.714(a)) absent a showing of extraordinary circumstances.

(5) The conference may be set at an earlier date by order of the Court or by written stipulation of the parties.

(6) Designation of trial counsel: Trial counsel and, except for good cause shown, back-up trial counsel, must be specified at the case management conference. If such counsel is not

specified, relief from the scheduled trial date may not be obtained based upon the ground that counsel is engaged elsewhere.

(7) Conference orders: At the initial conference, the program judge will make appropriate pre-trial orders that may include the following:

(A) An order referring the case to arbitration, mediation or other dispute resolution process;

(B) An order transferring the case to the limited jurisdiction of the superior court;

(C) An order assigning a trial date;

(D) An order identifying the case as one which may be protracted and determining what special administrative and judicial attention may be appropriate, including special assignment;

(E) An order identifying the case as one which may be amenable to early settlement or other alternative disposition technique;

(F) An order of discovery; including but not limited to establishing a discovery schedule, assignment to a discovery referee, and/or establishing a discovery cut-off date;

(G) An order scheduling the exchange of expert witness information;

(H) An order assigning a mandatory settlement conference date pursuant to Local Rule 2.3(k) and 2.4; and

(I) Other orders to achieve the interests of justice and the timely disposition of the case.

(8) CourtCall Telephonic Appearances

(A) Reference CRC, Rule 3.670

(B) Procedure. Telephonic appearances through the use of CourtCall, an independent vendor, are permitted at case management conference hearings. A party wishing to make a telephone appearance must serve and file a Request for Telephone Appearance Form with CourtCall not less than five court days prior to the case management conference hearing. Copies of the Request for CourtCall Appearance form and accompanying information sheet are available in the Clerk's office. There is a fee to parties for each CourtCall appearance and fees are paid directly to CourtCall. CourtCall will fax confirmation of the request to parties.

(C) On the day of the case management conference hearing, counsel and parties appearing by CourtCall must check-in five minutes prior to the hearing. Check-in is accomplished by dialing the courtroom's dedicated toll-free teleconference number and access code that will be provided by CourtCall in the confirmation. Any attorney or party calling after the check-in period shall be considered late for the hearing and shall be treated in the same manner as if the person had personally appeared late for the hearing.

(D) At a case management conference, parties may be referred to an appropriate dispute resolution ("ADR") process (e.g., mediation, binding arbitration or neutral evaluation). If parties are referred ADR, they must redial the dedicated toll-free teleconference number immediately following their case management conference appearance and use a second CourtCall access code to telephonically appear at the ADR referral meeting with ADR staff. If a case has been referred to ADR, a party's case management conference appearance is not complete until they have also telephonically appeared at the mandatory ADR referral. If parties are referred to judicial arbitration, they do not have to appear at the ADR referral.

(f) Case Management Statement

At least 15 calendar days before the scheduled case management conference, each party shall file with the court and serve on all other parties a completed Judicial Council Case Management Statement. If the case is set for further case management conference hearing(s), all parties must file updated Case Management Statements 15 (fifteen) calendar days prior to the scheduled hearings(s).

(g) Appropriate Dispute Resolution, ADR, Policy Statement

The Court finds it is in the best interests of parties to litigation to participate in appropriate dispute resolution procedures, including but not limited to mediation, neutral evaluation, private or judicial arbitration, voluntary settlement conferences, and the use of special masters and referees. Therefore, all parties shall stipulate to, or be referred to, an appropriate form of dispute resolution before being set for trial, unless there is good cause to dispense with this requirement. Parties are encouraged to stipulate to judicial arbitration or ADR prior to the case management conference.

(h) Stipulations to Arbitration

(1) If the case is at issue, and all counsel and each party appearing in propia persona stipulate in writing to judicial arbitration prior to the case management conference, discovery will remain open following judicial arbitration. A written stipulation to judicial arbitration must be filed with the clerk and a copy immediately sent to the Master Calendar Coordinator at least 10 calendar days before the case management conference in order to avoid the need to appear at that conference. A written stipulation to arbitrate will be deemed to be without a limit as to the amount of the award unless it expressly states otherwise.

(2) It is the policy of this court to make every effort to process cases in a timely manner. Parties who elect or are ordered b the court to judicial arbitration must complete the arbitration hearing within the time frame specified by the court.

Parties who wish to continue the arbitration hearing after the jurisdictional time frame must submit a court provided form entitled "*Ex Parte Motion and Stipulation for continuance of Judicial arbitration Hearing.*" Parties can obtain a copy of the form by contacting the court's judicial arbitration administrator [See Local Rule 10.1(d)(1). Continuances without adequate grounds will not be considered. A case management judge will either grant or deny the request for continuance. If the request is denied, the case may be assigned a trial date. If the request is granted, the judge will impose a new deadline by which the arbitration must be completed.

(3) Parties who wish to change their election from judicial arbitration to another form of ADR must file a "Stipulation and [Proposed] Order to [Mediation, Neutral Evaluation, etc.] in Lieu of [Court-Ordered] Judicial Arbitration" with the Clerk of the Court. The Stipulation must

state that parties have: (i) notified both the judicial arbitration and ADR coordinators; (ii) cancelled the judicial arbitration hearing: (iii) scheduled the ADR session within five months of the previously scheduled judicial arbitration hearing; and (iv) stipulated to a trial date, which is not more than six months from the previously scheduled judicial arbitration hearing.

(i) Stipulations to Private ADR

(1) If a case is at issue and all counsel and each party appearing in propria persona stipulate in writing to ADR and file a completed Stipulation and Order to ADR with the clerk of the court at least ten (10) calendar days before the first scheduled case management conference, that conference shall be continued 90 days. The court shall notify all parties of the continued case management conference.

(2) If counsel and each party appearing in propria persona are unable to agree upon an appropriate ADR process, they shall appear at the case management conference.

(3) Following an appearance at a case management conference hearing, parties shall, within 21 calendar days , file a completed Stipulation to ADR and Proposed Order identifying the name of the ADR provider, date of ADR session and the names of those who will be in attendance at the ADR session. The completed Stipulation to ADR and Proposed Order shall be filed with the court by plaintiff's counsel. The parties, through counsel, if represented, shall confer with the court's Multi-Option ADR Project (M.A.P.) staff if they cannot agree on a provider. Plaintiff's counsel, shall additionally, send a copy of the completed Stipulation to the court's M.A.P. offices within the same 21-day period.

(4) All parties and counsel shall participate in the ADR process in good faith.

(5) To maintain the quality of ADR services the court requires cooperation from all parties, counsel and ADR providers in completing ADR evaluation forms, and returning these forms to the M.A.P. offices within 10 calendar days of the completion of the ADR process.

(6) In accordance with the Code of Civil Procedure, section 1033.5(c)(4), the court, in its discretion, may allow the prevailing party at trial the fees and expenses of the ADR provider, unless there is a contrary agreement by the parties.

(j) Setting Short Cause Matters

If the parties agree that the time estimated for trial is 5 hours or less prior to the conference, a written stipulation shall be filed at least 10 calendar days before the case management conference in order to avoid the need to appear at that conference and a copy immediately sent to the Master Calendar Coordinator. In the absence of a stipulation, either party may file a motion to have the matter designated a "short cause" and set the case accordingly. All such matters shall be presumed short cause unless the contrary is established at the hearing on the motion.

(k) Law and Motion

All law and motion matters shall be heard by the regularly assigned Law and Motion judge.

(l) Settlement Conferences

All cases not assigned to arbitration or some other dispute resolution mechanism will be assigned two settlement conference dates, the first of which will be at the earliest practicable date under the circumstances presented by the case, and the second within approximately two

weeks prior to the assigned trial date.

Cases assigned to arbitration or other form of ADR may be subjected to a settlement conference prior to the arbitration or ADR process, but will be assigned to a pre-trial settlement conference only if the arbitration/ADR procedure fails to resolve the case.

All cases which fail to resolve by the trial date will be subject to an additional settlement conference on the trial date.

*All* settlement conferences shall be subject to the requirements specified in Local Rule 2.4.

(m) Sanctions

Sanctions pursuant to CRC 2.30 shall be imposed for any violation of the civil case management system rules. The minimum sanction imposed shall be $150.00 payable to the court; sanctions payable to the court may be larger where appropriate and will be in addition to appropriate attorney fees and calendar changes, including any appropriate change in calendar status of the action.

Sanctions mandated hereby may be waived by the judge conducting the conference only upon an application showing good cause why sanctions should not be imposed.

(Adopted, effective July 1, 1996)(Amended, effective January 1,2000) (Amended, effective January 1, 2003) (Amended effective July 1, 2003) (Amended, effective January 1, 2005)(Amended, effective January 1, 2006) (Amended, effective January 1, 2007)

Rule 2.3.1 Orders to Show Cause re: Dismissals

(a) A hearing on an order to show cause why the case should not be dismissed for failure to prosecute the matter shall be set at the two year anniversary of the filing of the complaint and/or cross-complaint.

(b) An order to show cause hearing shall be set 45 days after court's receipt of notice of settlement.

(c) An order to show cause hearing regarding dismissals may be set by the court to achieve the interests of justice and the timely disposition of the case.

(d) An order to show cause hearing re: failure to complete judicial arbitration within the court-ordered time frame may be heard during the case management calendar. Sanctions may be imposed and a trial date may be assigned.

(Adopted, effective January 1,2000) (Amended, effective January 1, 2003)(Amended, effective January 1, 2006)

Rule 2.4 Settlement Conference

Reference: California Rule of Court, rule 222.

(a) At all settlement conferences, notwithstanding any other Rule:

(1) The attorney who will try the case or an informed associate with full authority to negotiate a settlement of the case shall personally attend.

(2) Any persons whose consent is required to authorize settlement shall personally attend; those parties that are corporations shall have in attendance an officer or other employee with authority to bind the corporation. Powers of attorney, oral or written, granting counsel settlement authority are unacceptable as a substitute for personal attendance at this conference. Defendant and cross-defendant shall personally attend if there is no insurance coverage, if there is an unsatisfied deductible, or if the insurance carrier is demanding that the insured contribute to settlement.

(3) With respect to any insured party, a representative of the insurance carrier with authority to settle which is meaningful considering the exposure to loss presented shall personally attend. If the claims representative in personal attendance has any limitation on his or her settlement authority, a representative of the carrier who has no such limitations shall be available to the court by telephone and shall remain available until released by the judge conducting the conference, regardless of the time of day at the location of that representative.

(4) Upon arrival at the department to which the conference has been assigned, counsel shall check in with the clerk and shall verify the attendance of those persons whose presence is required.

(5) Notwithstanding the provisions of CRC 3.1380(c), no later than five(5) court days before the date set for the settlement conference each party shall lodge with the office of the court administrator and serve on all other parties a written statement setting forth the following:

(A) A statement of facts.

(B) The contentions of each party to the action regarding liability and damages.

(C) An itemized list of special damages.

(D) In any case in which personal injury is claimed:

(i) A description of the nature and extent of any injury claimed, including residuals.

(ii) A description of the basis for and method of calculation of any claimed wage loss.

(E) The most recent demand and offer or a description of any other proposed settlement between or among the parties.

(6) All parties shall be prepared to make a bona fide offer of settlement.

(b) The personal attendance of any person who is required by these rules to be present may be excused only by the presiding judge upon application made prior to the day on which the conference is scheduled. Any such person whose attendance is excused must remain available by telephone until he or she has been excused by the judge conducting the conference regardless of the time of day at the location of that person.

(c) No conference may be continued without the consent of the presiding judge or, if known, the judge to whom the case has been assigned for conference.

(d) At all such conferences, the judge of the department to which the conference has been assigned shall first attempt to settle the case. If settlement discussions are inconclusive, the judge may adjourn the conference to a later date for further settlement discussions.

(e) Sanctions pursuant to CRC 2..30 shall be imposed for any violation of this rule. The minimum sanction imposed shall be $150.00 payable to the court; sanctions payable to the court may be larger where appropriate and will be in addition to appropriate attorney fees and calendar changes.

Sanctions mandated hereby may be waived by the judge conducting the conference only upon an application showing good cause why sanctions should not be imposed.

(Adopted, effective July 1, 1996) (Amended, effective January 1, 2003)(Amended, effective July 1, 2005) (Amended, effective January 1, 2007)

## PART 3. CALENDAR MANAGEMENT

Rule 2.5 Trial Date Settlement Conference

A further settlement conference shall be held on the date the case is called for trial in accordance with the procedures outlined in and with the attendance of those persons designated in Local Rule 2.4.

(Adopted, effective July 1, 1996)

Rule 2.6 Refund of Jury Fees: Duty to Notify Court

(Adopted, effective July 1, 1996) (**REPEALED** and Renumbered as Rule 2.7.6)

## CHAPTER 3. [RESERVED]

## CHAPTER 4. JURY RULES

Rule 2.7 Length of Jury Service

In compliance with CRC 2.1002, a person has fulfilled his or her jury service obligation when he or she has:

(a) Served on one trial until discharged.

(b) Been assigned on one day for jury selection until excused by the jury commissioner.

(c) Attended court but was not assigned to a trial department for selection of a jury before the end of that day.

(d) Been assigned to a trial department for selection of a jury and has been excused by the trial judge.

(e) Served one day on call.

(f) Served no more than 5 court days on telephone standby.

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2007)

Rule 2.7.1 Proposed Jury Instructions

(a) Reference California Rules of Court, Rules 2.1055 and 2.1050.

(b) The Trial Department shall determine in its discretion the timing of submission of proposed jury instructions.

(Amended, effective January 1, 2002) (Amended, effective January 1, 2006) (Amended, effective January 1, 2007)

Rule 2.7.2 Duty Of Counsel with Respect to Jury Instructions

Before delivery of proposed jury instructions to the trial judge and opposing counsel, counsel shall fill in all blanks, make all strikeouts, insertions and modifications therein which are appropriate to the case. Submission of a form, which requires additions or modifications to constitute a complete and intelligible instruction, shall not be deemed a request for such instruction.

In addition to a hard copy of the proposed jury instructions, counsel shall provide the modified instructions on a computer diskette, and a clean copy of the instructions to be given to the jury.

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2006)

Rule 2.7.3 Form of Proposed Jury Instructions (CCP §§ 607a, 609.)

All proposed jury instructions shall conform to the requirements of California Rules of Court, Rule 2.1055. Any jury instructions requested after the conclusion of taking evidence shall be in writing. The court, in its discretion, may permit instructions to be sent into the jury room in "Booklet Form". In

"Booklet Format" the text of the instruction is printed continuously on the page and may result in several instructions to the page. Such instructions may be accompanied by a table of contents.

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2006)

Rule 2.7.4 Changing Jury Instructions

If, after the jury instruction conference and at any time before giving the instructions and verdict and findings forms to the jurors, the trial judge determines to make any substantive change therein, all parties should be so advised on the record outside the hearing of jurors.

(Adopted, effective January 1, 2000)

Rule 2.7.5 Jury Instruction Conference

Before final argument and after submission to the trial judge of all proposed jury instructions, verdict and findings forms, a conference outside the presence of jurors will be held. Ordinarily, a reporter or recorder is not required at the commencement of such conference.

In the event the trial judge intends to give any instructions or use any form of verdict or findings on the court's own motion, such instructions, verdicts or findings should be delivered to counsel.

The trial judge will then discuss with counsel:

(1) Whether any requested proposed instructions, verdicts or findings are patently inappropriate and will be voluntarily withdrawn;

(2) Whether there is any patent omission of instructions, verdicts or findings which are appropriate and that may be given without objection;

(3) Whether there is any other modification, namely those to which the parties will stipulate.

Counsel shall meet prior to this conference to discuss each other's jury instructions and classify them into (1), (2) and (3) above.

The foregoing unreported conference will generally result in clarification of the matters, and creation of three categories of instructions, verdicts or findings that may be withdrawn, given or modified.

Thereafter, the conference should be reported and the trial judge should confirm for the record the matters agreed upon. The trial judge should also specify those instructions, verdicts and findings forms the court proposes to give, refuse or modify, whether at the request of a party or on the court's own motion. The court will hear any objections to the foregoing and rule thereon.

The trial judge should sign each requested instruction and indicate the disposition thereof, all of which shall be thereafter filed by the clerk. If a requested instruction is withdrawn, counsel shall so indicate by writing "withdrawn" and signing or initialing such instruction.

(Adopted, effective January 1, 2000)

Rule 2.7.6 Refund of Jury Fees: Duty to Notify Court

Jury fees shall be refunded pursuant to CCP Section 631.3 only if the party depositing the fees has given the master calendar coordinator written notice, at least two court days before the trial date, that the case settled, dropped or that the party's motion for continuance has been granted.

(Adopted, effective July 1, 2004 [former Rule 2.6])

## CHAPTER 5. GENERAL RULES

Rule 2.8 Family Law Rules

The local rules of San Mateo Superior Court relating to Family Law are contained in Division V of these rules, infra.

(Adopted, effective July 1, 1996)

Rule 2.9 Required Action

Action shall be taken on all calendared cases and a future date for action shall always be set. No case shall go "off calendar" without a future action being set.

(Adopted, effective July 1, 1996.)

Rule 2.10 Interpreters and Translators

a) Notice. When a party desires an interpreter, it shall be the responsibility of that party to give notice to the Court and all other parties of record. That party shall make arrangements for the presence and the payment of the interpreter.

b) Qualifications. Unless the interpreter is an official court interpreter, the interpreter's name and qualifications shall be provided to the court and opposing counsel five (5) court days prior to the date of the interpreter's appearance . If the interpreter is an official court interpreter, no prior disclosure is required.

c) Relations or friends. Without the consent of all parties, a relation or a friend may not be used as an interpreter or translator in a contested proceeding.

(Adopted, effective January 1, 2000)

**Rules 2.11 thru 2.19 (Reserved)**

## CHAPTER 6. CIVIL TRIAL RULES

Rule 2.20 Trial Motions, Briefs, Statements, and Witness Lists

Upon assignment to a trial department for trial by a jury, each party shall file with that department the following:

(1) Any in limine motions and response thereto;
(2) Any trial briefs;

(3) A concise non-argumentative statement of the case to be read to the jury; and
(4) A list of possible witness who may testify in the trial to be read to the jury panel by the court.

(Adopted, effective January 1, 2002)

Rule 2.21 In Limine Motions

Any in limine motions shall be served upon opposing counsel not less than five (5) days prior to trial. Any response shall be served upon the proponent of the motion not later than the first appearance in the Department of the Presiding Judge for trial assignment.

(Adopted, effective January 1, 2002)

Rule 2.22 Production of Exhibits

Any party intending to offer any exhibit at the time of trial shall be prepared, by the time of assignment to a trial department, with an original and sufficient copies of each such exhibit for all other parties and the court. The court may make, in it discretion, any orders it deems appropriate regarding the exchange and presentations of exhibits.

(Adopted, effective January 1, 2002)

**RULE NUMBERS 2.23 TO 2.29 ARE RESERVED**

## CHAPTER 7. COMPLEX CASES

Rule 2.30 Determination of Complex Case Designation.

**A. Decision of Complex Case to be Made by Presiding Judge**

The Presiding Judge shall decide whether an action is a complex case within the meaning of California Rules of Court, Rule 3.400, subdivision (a), and whether it should be assigned to a single judge for all purposes. All status conferences or other hearings regarding whether an action should be designated as complex and receive a singly assigned judge shall be set in the Presiding Judge's department.

B. **Provisional Designation.**

An action is provisionally a complex case if it involves one or more of the following types of claims: (1) antitrust or trade regulation claims; (2) construction defect claims involving many parties or structures; (3) securities claims or investment losses involving many parties; (4) environmental or toxic tort claims involving many parties; (5) claims involving massive torts; (6) claims involving class actions; or (7) insurance coverage claims arising out of any of the claims listed in subdivisions (1) through (6).

The Court shall treat a provisionally complex action as a complex case until the Presiding Judge has the opportunity to decide whether the action meets the definition in California Rules of Court, Rule 3.400, subdivision (a).

C. **Application to Designate or Counter-Designate an Action as a Complex Case.**

Any party who files either a Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.401) or a counter or joinder Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.402, subdivision (b) or (c)), designating an action as a complex case in Items 1, 2 and/or 5, must also file an accompanying Certificate Re: Complex Case Designation in the form prescribed by the Court. The certificate must include supporting information showing a reasonable basis for the complex case designation being sought. Such supporting information may include, without limitation, a brief description of the following factors as they pertain to the particular action:

(1) Management of a large number of separately represented parties;
(2) Complexity of anticipated factual and/or legal issues;
(3) Numerous pretrial motions that will be time-consuming to resolve;
(4) Management of a large number of witnesses or a substantial amount of documentary evidence;
(5) Coordination with related actions pending in one or more courts in other counties, states or countries or in a federal court;
(6) Whether or not certification of a putative class action will in fact be pursued; and
(7) Substantial post-judgment judicial supervision.

A copy of the Certificate Re: Complex Case Designation must be served on all opposing parties. Any certificate filed by a plaintiff shall be served along with the initial service of copies of the Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.401), summons, and complaint in the action. Any certificate filed by a defendant shall be served together with the service of copies of the counter or joinder Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.402, subdivision (b) or (c)) and the initial first appearance pleading(s).

D. **Noncomplex Counter-Designation.**

If a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation has been filed and served and the Court has not previously declared the action to be a complex case, a defendant may file and serve no later than its first appearance a counter Civil Case Cover Sheet designating the action as not a complex case. Any defendant who files such a noncomplex counter-designation must also file and serve an accompanying Certificate Re: Complex Case Designation in the form prescribed by this Court and setting forth supporting information showing a reasonable basis for the noncomplex counter-designation being sought.

Once the Court has declared the action to be a complex case, any party seeking the Presiding Judge's decision that the action is not a complex case must file a noticed motion pursuant to Section H below.

E. **Decision by Presiding Judge on Complex Case Designation; Early Status Conference.**

If a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation have been filed and served, the Presiding Judge shall decide as soon as reasonably practicable, with or without a hearing, whether the action is a complex case and should be assigned to a single judge for all purposes.

Upon the filing of a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation, the Clerk of the Court shall set a status conference at which the Presiding Judge shall decide whether or not the action is a complex case. This status conference shall be held no later than (a) 60 days after the filing of a Civil Case Cover Sheet by a plaintiff (pursuant to California Rules of Court, Rule 3.401) or (b) 30 days after the filing of a counter

Civil Case Cover Sheet by a defendant (pursuant to California Rules of Court, Rule 3.402, subdivision (a) or (b)), whichever date is earlier.

Alternatively, in his or her sole discretion, the Presiding Judge may make the decision on complex case designation and single assignment, without a status conference, based upon the filed Civil Case Cover Sheet and accompanying Certificate Re: Complex Case Designation alone.

F. **Notice.**

The party who seeks a complex case designation or a noncomplex counter-designation must give reasonable notice of the status conference to the opposing party or parties in the action even if they have not yet made a first appearance in the action. Such notice of the status conference shall be given in the same manner as is required for ex parte applications pursuant to California Rule of Court, Rule 379.

G. **Representations to the Court.**

By presenting to the Court a Certificate Re: Complex Case Designation, an attorney or unrepresented party is certifying to the best of that person's knowledge, information, and belief, formed after reasonable inquiry under the circumstances:

(1) That the complex case designation or noncomplex counter-designation is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) That the claims, defenses, or other legal contentions referenced therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) That the statement of supporting information relevant to the complex case designation or noncomplex counter-designation have evidentiary support or are believed, in good faith, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) That there is a reasonable basis for that party's complex case designation or noncomplex counter-designation.

If, after notice and a reasonable opportunity to be heard, the Court determines that this subpart has been violated, the Court may impose an appropriate sanction upon the attorneys, law firms, or self-represented parties that have violated this subpart.

H. **The Presiding Judge's Continuing Power.**

With or without a hearing, the Presiding Judge may decide, on his or her own motion or on a noticed motion by any party, that a civil action is a complex case or that an action previously declared to be a complex case is not a complex case.

I. **Pilot Program; Sunset Provision. (Repealed, effective 1/1/2007).**

**(Adopted, effective July 1, 2004)(Amended, effective July 1, 2005) (Amended, effective January 1, 2006)(Amended, effective January 1, 2007)**

# SAN MATEO SUPERIOR COURT

## COURTCALL TELEPHONIC APPEARANCES

**JANUARY, 2004**

**Until further notice, voluntary telephonic appearances ("CourtCall Appearances") may continue to be made for Case Management Conferences in Departments 6 (Judge Kopp) and 21 (Judge Foiles), and for Civil Law and Motion matters in Department 1 (Judge Mittlesteadt) from 1/1/04 to 6/30/04 or Department 3 (Judge Freeman) from 7/1/04 to 12/31/04.**

**Counsel may make a CourtCall Appearance as follows:**

1. **NOT LESS THAN FIVE (5) COURT DAYS BEFORE THE HEARING DATE IN DEPARTMENTS 6 AND 21 AND NOT LATER THAN 4:30 P.M. ON THE COURT DAY PRIOR TO HEARING IN DEPARTMENT 1 (1/1-6/30) or DEPARTMENT 3 (7/1-12/31) serve and file with CourtCall (not the Court!) a Request for CourtCall Telephonic Appearance (included in this package);**

2. **Pay a fee of $55.00 to CourtCall, LLC.**

**Required filing and payment procedures are detailed within the instruction sheet "How to Use CourtCall," (see reverse). A confirmation from CourtCall, LLC, will be faxed to your office upon the filing and payment outlined above.**

**A CourtCall Appearance is made as part of a participating Department's usual calendar. Unless notified to the contrary, all counsel who have timely filed their Request and have paid the fee may appear by dialing the toll-free teleconference number provided by CourtCall, LLC. A pre-hearing check-in will occur five minutes before the scheduled hearing time. CourtCall Appearances will generally be afforded a calendar preference.**

**A CourtCall Appearance is voluntary and may be made without consent of the other party or advance consent of the Court. The Court, however, reserves the discretion to require personal appearance. In matters where only one party elects to make a CourtCall Appearance, the matter will be heard on the Court's speakerphone.**

**See reverse side for "How to Use CourtCall"**

COURTCALL, LLC
*Telephonic Court Appearances*
6365 ARIZONA CIRCLE
LOS ANGELES, CALIFORNIA 90045
(TEL) (310) 342-0888 (888) 88-COURT
(FAX) (310) 743-1850 (888) 88-FAXIN

## How To Use CourtCall! - SAN MATEO

### Filling Out The Form

1. **Serve:** Not less than 5 Court Days before the hearing (or 4:30 PM the Court day prior to hearing for Dept. 1 through 6/30/04 or Dept 3 from 7/1/04 through 12/31/04) **COMPLETELY** fill out the original of the Request for CourtCall Appearance (the "Request Form"). Retain the original Request Form in your file. DO NOT FILE IT WITH THE COURT. Check the box indicating the method of payment of the fee. **INCOMPLETE REQUEST FORMS MAY RESULT IN A DELAY IN PROCESSING!!**

2. **Fax to CourtCall:** Fax a copy of the Form to CourtCall not less than 5 Court days prior to the hearing (of 4:30 pm the Court day prior to hearing for Dept. 1 or Dept. 3 as noted above). Do not fail to do so, as the CourtCall Calendar is set through these faxes!! **LATE FILINGS, IF ACCEPTED, ARE SUBJECT TO A LATE FEE!!**

3. **Payment by Credit Card:** Fill out credit card information *only* on the copy faxed to CourtCall and have that copy SIGNED by the PERSON WHOSE NAME IS ON THE CREDIT CARD.

4. **Payment by Check:** Fax a copy of check - write case # on check-payable to Telephonic Hearing Account to CourtCall with your Form and mail your check and a copy of your Form to CourtCall.

5. **Proof of Payment/CalendarConfirmation:** Under normal circumstances you should receive a Confirmation from CourtCall, by fax, within 24 hours of submission of a completed Request Form. The Confirmation will contain your teleconference number and access code (if any**).

**IF YOU DO NOT RECEIVE YOUR FAXED CONFIRMATION FROM COURTCALL WITHIN 24 HOURS OF SUBMISSION, CALL COURTCALL IMMEDIATELY TO VERIFY YOUR STATUS - WITHOUT A WRITTEN CONFIRMATION YOU ARE NOT ON THE COURTCALL CALENDAR!**

**FOR INFORMATION AND QUESTIONS ABOUT A COURTCALL APPEARANCE, CALL COURTCALL, NOT THE CLERK/COURT!**

### When You Make The Call

* YOU MUST CALL THE TOLL FREE NUMBER ON YOUR CONFIRMATION 5 MINUTES BEFORE YOUR SCHEDULED HEARING TIME. NEVER USE A CELLULAR OR PAY PHONE. If prompted, dial your Access Code.** You will be advised whether you are joining the call in progress or if you are the first to call or you may be placed on "music-on-hold."

* If Court has commenced, DO NOT INTERRUPT! You will have an opportunity to speak. If the call is in progress and you hear voices, wait until an opportunity to speak arises without interrupting others. The Clerk may be performing a check-in and will get to you.**

* After check-in wait until your case is called. Use your speakerphone while waiting if you are able to mute the microphone to eliminate ambient noise. When your case is called you MUST USE THE HANDSET. Identify yourself each time you speak and use common courtesy.

* If you are the first person on the call be patient, even if you experience silence or are placed on "music-on-hold," as the Clerk will join the call in due course. As others join you will hear a mild beep-beep" indicating others are on the line. Until your case is called do not speak other than with the Clerk. ** If the Clerk does not join the call within 15 minutes after your scheduled hearing time, have a staff member call CourtCall on our toll free Help Line - (888) 882-6878 and we will be happy to assist you. **DO NOT LEAVE THE LINE!**

"If the Confirmation from CourtCall does not list an access code with your assigned teleconference number, your matter will be heard privately, not in open court. The 5 minute check-in period will be conducted by a Teleconference Specialist who will conduct the conference in accordance with the Court's instructions. You will be placed on "music-on-hold" while you wait for the Judge to call your matter. The rules regarding cell phones and use of handsets apply. **IF YOUR HEARING IS CONTINUED YOU MUST NOTIFY COURTCALL OF THE CONTINUANCE, IN WRITING, PRIOR TO YOUR COURTCALL APPEARANCE TO HAVE YOUR FEE APPLY TO THE CONTINUED HEARING. MATTERS CONTINUED AT THE TIME OF THE HEARING REQUIRE A NEW FORM AND ANEW FEE FOR THE CONTINUED DATE.**

| ATTORNEY OF RECORD (Name /Address/Phone/Fax): State Bar No. ____________ ATTORNEY FOR (Name): | DO NOT FILE WITH COURT **COMPLETELY FILL OUT/CORRECT FORM BEFORE SUBMITTING TO COURTCALL!!** |
|---|---|
| **San Mateo Superior Court** | |
| | **CASE NUMBER:** **JUDGE/DEPARTMENT:** **DATE AND TIME:** **NATURE OF HEARING:** |
| **REQUEST FOR COURTCALL TELEPHONIC APPEARANCE** | |

1. ______________________ (Name of specific attorney appearing telephonically) requests a CourtCall telephonic calendar appearance at the above referenced proceeding and agrees to provisions of the Rule/Order/Procedure Re: CourtCall Telephonic Appearances. **I UNDERSTAND THAT *I DIAL* INTO THE CALL FIVE MINUTES BEFORE ITS SCHEDULED START TIME.**

2. Not less than five Court days prior to hearing (or 4:40 pm the Court day prior for Dept. 28), a copy of this document was served on all other parties and faxed to CourtCall, Telephonic Appearance Program Administrator at (310) 572-4679 OR (888) 88-FAXIN.

3. The non-refundable CourtCall Appearance Fee in the sum of $55.00 (plus additional fee of $35.00 **if late filing is accepted)** is paid as follows:

☐ Check (copy faxed-write case # on check) payable to CourtCall. DO NOT MAIL ORIGINAL. Signature below authorizes an ACH (electronic) debit in the amount and from the account listed on the check.

☐ Charged to CourtCall Debit Account No.:______________________

☐ Charged to VISA, MasterCard or American Express:

**TO BE COMPLETED ONLY ON THE COPY SUBMITTED TO CourtCall, LLC:**

Credit Card: O VISA O MasterCard O American Express

Credit Card Number:____________________ Expiration Date:__________

To pay by credit card, the copy of this form submitted to CourtCall, LLC, must be signed by the person whose card is to be charged and must be **faxed** to CourtCall at (310) 572-4670 or (888) 88-FAXIN with the above credit card information completed. The signature below constitutes authorization to charge the above referenced credit card.

Date: ________ Name on Card: ____________ Type Name ____________ Signature

4. **Request Forms are processed within 24 hours. Call CourtCall if you do not receive a faxed Confirmation from CourtCall within 24 hours. WITHOUT A WRITTEN CONFIRMATION YOU ARE NOT ON THE COURTCALL CALENDAR AND MAY BE PRECLUDED FROM APPEARING TELEPHONICALLY! COURTCALL'S LIABILITY CONCERNING THIS TELEPHONIC APPEARANCE IS LIMITED TO THE FEE PAID TO COURTCALL.**

Dated:______________________ ______________________ Signature